GAMALIEL HUGGANS, Appellant, *v.* CHRISTOPHER RILEY, as Commissioner of Highway, etc., Respondent.

The provisions of the acts extending the powers of boards of supervisors (§ 2, chap. 855, Laws of 1869; subd.. 3, § 1, chap. 482, Laws of 1875), which empower said boards to authorize and provide for the erection of bridges, do not take away the power vested in the commissioners of highways as to the care and superintendence of highways.

Under the power given to those officers to repair highways, the highway commissioner of a town may build a new bridge when necessary to connect the two portions of a highway interrupted by an intersecting stream.

In an action, by a citizen and taxpayer of the town of L., to restrain the commissioner of highways of said town from building a bridge, part of a highway which had been laid out, to connect two parallel highways, one on each side of a stream, it appeared that the people of said town had voted money to build a bridge " at a point to be designated and fixed by the town board " between two certain points named. The board of supervisors authorized the supervisor of the town to borrow the money, but refused to ratify the location of the bridge at the point fixed by the town board, and failed to make a location itself, because of inability of a majority to agree. The commissioner of highways proceeded to erect the bridge as located by the town board. *Held,* that the action could not be maintained; that there was a practical location of the bridge, and the commissioner had power to erect it.

Reported below, 51 Hun, 501.

(Argued October 31, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 7, 1888, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Emory A. Chase* for appellant. The General Term in considering the power of commissioners of highways did not properly take into account the distinction between moneys

raised by the town on the application or statement of the commissioner for repairs of highways and bridges, and moneys raised by an act of the legislature or of the board of supervisors of the county for a new bridge or other specific purpose. (2 R. S. [8th ed.] 1348; Laws of 1857, chap. 615; Laws of 1832, chaps. 148, 280; Laws of 1833, chap. 231; Laws of 1834, chap. 307; *Hill* v. *Bd. Suprs.*, 12 N. Y. 59; Laws of 1838, chap. 314, § 1; Laws of 1869, chap. 855, § 2; *People* v. *Meech*, 14 Abb. [N. S.] 429; *Morrell* v. *Bd. Suprs.*, 15 N. Y. S. R. 860, 861; *Mather* v. *Crawford*, 36 Barb. 564; Pub. Stat R. I. chap. 65, § 1; *State* v. *White*, 18 At. Rep. 179.) The point made by the defense, on the motion for a nonsuit and on the arguments herein, that the moneys were raised by an appropriation specifying a particular place of location for the bridge, and that the board by implication or otherwise located the bridge, is based upon misstatements of fact and should have no weight. (*Collins* v. *Speer*, 99 N. Y. 225.) This action is properly brought under section 1925 of the Code of Civil Procedure. (Laws of 1872, chap. 164; *Ayres* v. *Lawrence*, 59 N. Y. 192; *Warren* v. *Baldwin*, 105 id. 534; *Osterhaudt* v. *Ridgney*, 98 id. 222; *Metzger* v. *A. & C. R. R. Co.*, 79 id. 171.)

*J. A. Griswold* for respondent. The decision of the Special Term involves the proposition: That in all cases where a new road is laid out by the commissioner of highways in any of the towns of this state crossing a stream, ditch or gully requiring a bridge over it to make the road passable as part of the highway, or where a ditch, water-course or gully is made in an old road, caused by floods or otherwise, requiring a "new bridge" to make the road passable, such bridge must be located by the board of supervisors or the state legislature before the proper officers of the town can legally build the bridge. This is erroneous. (1 Edm. Stat. 461, 462, §§ 2, 3, 4; Thomp. on Highways, 350; *Mather* v. *Crawford*, 36 Barb. 569; Laws of 1875, chap. 482, § 1; *People* v. *Meech*, 14 Abb. [N. S.] 429, 430.)

Gray, J. This is an action brought by a citizen and taxpayer of the town of Lexington, Green county, to restrain the defendant, as the commissioner of highways of his town, from building a bridge at a certain point over a stream, and the injunction was, in the first instance, granted upon the ground that the site of the bridge had not been located by the board of supervisors of the county, or by any competent authority. The learned justice at the Special Term thought that the commissioner of highways had no power to appropriate the town moneys for the building of the bridge, for the lack of any authority in law to locate it. At the General Term this decision was reversed, upon grounds so fully stated as to leave little for us to add in affirming the decision.

It appears that the town's people voted the sum of $3,000 "to build an iron bridge * * * at a point to be designated and fixed by the town board between" * * * two certain points named. Subsequently the board of county supervisors authorized the town supervisor to borrow the money for that purpose, but they refused to ratify the location of the bridge as fixed by the town board. A committee of the supervisors was appointed to locate the site and report, but the board failed to make the location, for inability to agree upon it by a majority vote. The bridge, it seems, was designed to connect two highways, running on either side of the stream, and, prior to the commencement of this action, the commissioner of highways of the town had duly laid out a highway crossing the stream, and by which the two parallel highways would be joined upon the construction of a bridge. The point at which this connecting highway intersected the stream was within the two points which had been designated, and the question is as to whether the highway commissioner's action was so unwarrantable, in going ahead and building the bridge there, as to subject him to this action. It appears that the moneys having been provided for, he contracted for the building of it before the highway was laid out; but inasmuch as a highway was, as matter of fact, laid out before this action was taken, we are bound to consider the case in the light of the

statutory powers of highway commissioners to build a bridge connecting the two ends of a highway which the stream of water separates.

The argument of the appellant is, substantially, that as this was a new bridge and the moneys for its erection were raised by authority of the board of supervisors of the county, its location and, therefore, the expenditure of the moneys were matters pertaining exclusively to the jurisdiction and resting solely within the action of that body. This argument depends for its soundness upon whether the acts of the legislature, which were passed in 1869 (Chap. 855, § 2), and in 1875 (Chap. 482, § 1, subd. 3), shall be construed as confining the power to locate and build a bridge to the boards of supervisors of counties. By the earlier act they are given the power "for the location, erection and repair or purchase of any bridge, except over navigable streams." By the later act they are empowered " to authorize the location, change of location and construction of any bridge   *   *   *   which shall be applied for by any town."

We need not stop to consider exactly what, if any, was the inter-dependence of these acts of the legislature, or what the objects, with respect to the powers given, in the first one, to repair, or, in the second one, to the action upon the application of a town, if they have not taken away the power, which was vested by the laws of the state in the commissioner of highways, as to the care and superintendence of highways and bridges. We do not think the acts in question have affected his power in those respects, or that they can be construed to have relation to those matters which, within the limits of a town, properly pertain to the office of its highway commissioner. May, then, that officer, when a highway is interrupted by a stream of water, erect a bridge to connect its two ends? We think he can, and that, by fair implication, the power to repair a highway, which he possesses, may include the power to build a new bridge. Such a view was taken in the case of *Mather* v. *Crawford* (36 Barb. 564), where Mr. Justice JOHNSON said: " It is true that the statute does not in direct and

express terms make it the duty of the highway commissioner to construct new bridges, but I think it does so by unavoidable implication. Such bridges are merely parts of the highways of the town, and are absolutely necessary in order to render highways at all times passable." And this is the reasonable view of the powers of the commissioner. Where, in the general interests of the county, action may be required with reference to the public roads or bridges, the legislature has conferred a power to act upon its board of supervisors; but, when the interests of the public of a town demand that its highway be made passable, the commissioner of highways has as much the implied power to effect that result by constructing a new bridge, as he has the express power of doing so by repairing an old, or replacing a destroyed bridge. The only ground for the claim of an exclusive right in the board of supervisors to act in the matter of location is statutory. There is no claim upon the county, as in the case of an application to the board to cause the moneys to be raised by the county. The town has voted for a bridge in a certain locality and has assumed and provided for the expense of its erection. For the court to hold that because the precise location had not been made and would not be made by the county supervisors, no bridge can be constructed at all, would, in my opinion, be a view of the statutory regulations on that subject, which is quite unwarrantable. I do not think the legislature meant any such thing, and its acts are not susceptible of a construction, which lodges such exclusive power in the county board of supervisors.

Then, again, we think that there was in this case a practical location of the bridge, and the spirit of the law, if not the letter, has been complied with. The town board had fixed the limits within which the bridge was to be erected, and the board of supervisors had ratified the action of the people of the town in voting the money, and had authorized its raising by a loan. Disagreement among the members of the board of supervisors resulted in the failure of that agency to settle the precise point for the bridge. A public highway, thereupon, is competently

laid out over a point in the stream within the given points,. and the highway commissioner proceeds with the construction. of a bridge at that place in the highway. That brought the whole matter to a focus and left it within the powers of the highway commissioner to act independently.

The order and judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.